UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STATE BANK OF TEXAS,<br><br>　　　　　　　　　　　Plaintiff,<br>v.<br>SAM PARABIA, *ET AL.*,<br>　　　　　　　　　　　Defendants. | Case No.: 14-cv-3031-L-DHB<br><br>**ORDER GRANTING MOTION FOR SANCTIONS; BRIEFING SCHEDULE**<br><br>**[Doc No. 334]** |

Pending before the Court in this judicial foreclosure action is Motion for Sanctions Against Stephen F. Lopez, Esq. under 28 U.S.C. § 1927 filed by Plaintiff State Bank of Texas (the "Bank"). (Doc. no. 334.) Lopez, the counsel for Defendants Sam and Perin Parabia (together the "Parabias"), filed an opposition. (Doc. no. 335.) The Bank filed a reply. (Doc. no. 336.) Pursuant to Civil Local Rule 7.1(d)(1), this motion is decided on the briefs without oral argument. For the reasons stated below, the motion is granted. The Court reserves the issue of attorneys' fees for decision upon further briefing.

I.   BACKGROUND

The Parabias purchased a luxury residence located at 7213 Romero Drive in La Jolla, California, valued at over $ 4 million (the "Property"). (*See In re Sam F. Parabia,*

///

19-bk-02166 (S.D. Cal.) ("Sam Parabia's Bankruptcy"), doc. no. 10-1 at 2[1] (valued at $4.3 mil.); *see also In re Perin Parabia,* 18-bk-02058 (S.D. Cal.) ("Perin Parabia's Bankruptcy") doc. nos. 14 at 4, 79 at 1 & Ex. A (valued at $6.3 mil.); doc. no. 311 herein at 1.) The Parabias signed a promissory note secured by a deed of trust on the Property. Ultimately, the Bank acquired the Parabias' secured debt. Because the Parabias were in default, the Bank filed this action seeking judicial foreclosure.

In early 2015, the parties entered into a Settlement Agreement and Mutual Release effective April 9, 2015 (doc. no. 27-1 ("Settlement")) requiring the Parabias to pay the Bank $1.3 million by making a $25,000 payment by March 27, 2015, and a second payment for the balance by June 27, 2015. (*Id.* at 2-3.) The Settlement provided it "shall be secured by a Stipulation for Entry of Judgment for Judicial Foreclosure ([doc. no. 27]'Stipulation') against [the Parabias]." (*Id.* at 3.) If the Parabias made a timely second payment, the Bank would file a request for dismissal with prejudice; if they did not, the Bank could file the Stipulation with the Court and record the resulting judgment without notice to the Parabias. (*Id.*)

The Parabias defaulted. Accordingly, on July 7, 2015, the Bank filed the Stipulation together with the Settlement, and requested entry of judgment. The Stipulation was signed by the Parabias and their counsel. The Court approved it and entered the Order Granting Joint Motion for Judgment of Foreclosure and Order of Sale. (Doc. no. 28.) A writ of sale and notice of sale were served on the Parabias. (Docs. no. 37, 38, 41-44, 46.)

On March 1, 2016, a third-party creditor filed a Judgment Lienholder's Objection to U.S. Marshal's Sale, claiming to hold a lien on the Property. (Doc. no. 48.) The Bank responded indicating it had identified additional lienholders and would move to vacate the judgment and request leave to amend to add the newly-discovered lienholders as

---

[1] The page numbers were electronically assigned to the filing.

defendants. (Doc. no. 51.) The Bank's response was served on the Parabias. (*Id.* at 5.) Shortly thereafter, the Bank filed its motion to vacate the judgment and requested leave to amend. It served the motion on the Parabias, the Parabias did not respond, and the Court granted the Bank's motion. (Docs. no. 53, 54.) On May 2, 2016, the Bank served the second amended complaint on the Parabias. (*See* doc. no. 56-15.)

Only one of the new lienholder defendants responded to the second amended complaint. The Parabias did not respond. Defaults were entered against all non-responding defendants. The Bank moved for a default judgment against them and for summary judgment against the lienholder who responded. None of the non-responding defendants opposed entry of default judgment. (*See* doc. no. 84 at 1.) On September 15, 2017, the Court issued Order (1) Granting Plaintiff's Motion for Summary Adjudication and (2) Granting Plaintiff's Motion for Default Judgment ("Judicial Foreclosure Order"), which provided for foreclosure of the Property by way of a sale conducted by the United States Marshal and set out the amounts owed by the Parabias. (Doc. no. 84 at 8-10.) Judgment was entered accordingly. (Doc. no. 86.) Writs of sale and execution were issued shortly thereafter. On November 2, 2017, the U.S. Marshal served the writs on the Parabias. (Doc. nos. 98-107, 155, 156.)

On November 13, 2017, Perin Parabia filed an Objection to U.S. Marshal's Sale. (Doc. no. 159 ("Objection").) She sought to set aside the Judicial Foreclosure Order and the default judgment contending she was unaware of this case and the default judgment, and that either her brother (Defendant Sam Parabia) or counsel forged her signature on the Stipulation. She did not contend that her signature on the Settlement was forged. For the reasons stated in the order, including the fact that Perin Parabia's claims were contradicted by the record, her Objection was overruled. (Doc. no. 164.)

On March 5, 2018, the U.S. Marshal served the Parabias with the notice of sale. (Doc. nos. 167, 169, 172-77.) On the day before the sale, April 5, 2018, Perin Parabia filed a Chapter 11 bankruptcy petition. (*See* Perin Parabia's Bankruptcy, doc. no. 1.) On September 7, 2018, she stipulated to dismissal. (*Id.* doc. no. 60.)

Immediately after the dismissal, the Bank again requested a writ of execution from this Court and noticed the sale of the Property. (Doc. nos. 203-05.) Again, the U.S. Marshal served the Parabias with the notice of sale. (Doc. nos. 206-08, 234, 238, 240, 242.)

On April 17, 2019, the morning of the noticed sale, Sam Parabia filed a Chapter 7 bankruptcy petition. (Sam Parabia's Bankruptcy, doc. no. 1.) The Bank filed a motion for relief from stay, which Sam Parabia did not oppose. (*Id*. doc. nos. 59, 72.) On August 20, 2019, the Hon. Laura D. Taylor granted the motion finding that "the Debtor's filing of the Petition was a part of a scheme to delay, hinder, or defraud creditors that involved [¶] multiple bankruptcy filings affecting the Romero Drive Property." (*Id.* doc. no. 76 at 3.)

On the day when Sam Parabia filed his bankruptcy case, Perin Parabia filed a complaint in the San Diego County Superior Court alleging claims for negligent misrepresentation, violation of California Business & Professions Code § 17200 *et seq.*, and breach of the implied covenant of good faith and fair dealing against the Bank and its CEO Chan Patel. (*Dr. Perin Parabia v. State Bank of Texas et al.*, 37-2019-00019786 (Cal. Super. Ct.).) The Bank removed the action to this District. (19cv00725 ("Perin Parabia's Removed Action") doc. no. 1.) In her verified complaint, Perin Parabia averred that she "entered into a settlement agreement [with the Bank] dated April 9, 2015, acknowledging certain [of her] defaults . . . and requiring entry . . . into a Stipulation for Judgment of Foreclosure and Order of Sale."[2] (*Id*. doc. no. 1-2 at 10.) Further, she averred that in January 2016 Sam Parabia traveled to India where he sold 81 acres of mango farm, met with the Bank's CEO, and paid off the Parabias' debt to the Bank. (*Id.* at 11.) She requested damages and an order enjoining foreclosure of the Property. (*Id*. at

---

[2] This is the same stipulation she had relied upon in her Objection to the foreclosure sale arguing her signature had been forged. (*Cf.* doc. no. 27 (Stipulation); doc no. 27-1 (Settlement); doc. no. 159 at 9.)

12, 18.) The Bank moved to dismiss. (*Id.* doc. no. 6-1.) Perin Parabia did not oppose the motion. (*See id.* doc. nos. 10, 14.) On August 3, 2020, the Hon. Roger T. Benitez granted the Bank's motion and dismissed the case based on the res judicata effect of the default judgment entered in this action. (*Id.* doc. no. 14.)

When the stay in Sam Parabia's bankruptcy was lifted, the Bank again requested a writ of execution. In September 2019, the U.S. Marshal again served the Parabias with the notice of sale. (Doc. nos. 249, 250, 252, 256-60.) The sale was noticed for October 9, 2019. (*See* docs. no. 296-3 at 2, 296-4.)

Having recently retained Lopez, on October 4, 2019, the Parabias filed a Motion to Set Aside Default and Default Judgment. (Doc. no. 284 ("Mot. to Set Aside Default").) The motion sought to set aside the Judicial Foreclosure Order -- the same relief Perin Parabia had sought in her Objection, and the Court denied, in November 2017. (*See* docs. no. 159, 164.) In a further attempt to forestall the foreclosure sale, on October 7, 2019, the Parabias filed an Emergency Ex parte Application for Temporary Restraining Order. (Doc. no. 285 ("the Parabias' TRO").) Both motions were denied on October 8, 2019. The Motion to Set Aside Default was denied because the Parabias failed to carry the burden on their arguments that the default judgment was obtained through fraud, and that the judgment had been satisfied, released or discharged pursuant to the agreement between Sam Parabia and Chan Patel in India. (Doc. no. 290 at 3-4.) The Parabias' TRO was denied because they failed to show they were likely to succeed on the merits or that issuing a temporary restraining order would benefit the public interest. (*Id.* at 4-5.)

Immediately after the judicial foreclosure sale, which took place on October 9, 2019 (doc. no. 297), the Bank's counsel informed Lopez that the Bank was the successful bidder and requested to inspect the Property while the Parabias remained in possession during their 90-day right of redemption. (Doc. no. 334-3 at 1 & Exs. 1 & 2.) Lopez responded "I doubt my clients will cooperate at all. I am pretty sure you will need to bring an unlawful detainer." (*Id.* Ex. 1.) Apparently unaware that the Parabias' TRO and Motion to Set Aside Default had been denied, he added, "Note my clients will go forward

with their motion regardless most likely [*sic*]." (*Id.*) The Bank's counsel contacted Lopez twice more to inform him that the Parabias' motions had been denied and to meet and confer on the issue of inspection, however, he received no response. (*See* doc. no. 294-2 at 1-2 and Ex. B.)

Having received no response, on October 11, 2019, the Bank filed an ex parte application seeking emergency relief to permit entry on the Property, restrain waste, and appoint a receiver to collect rents. (Doc. no. 291, 294 ("the Bank's TRO").) The Parabias opposed, arguing that the Bank was not entitled to relief because it had not filed, and prevailed on, an unlawful detainer action. (Doc. no. 292.) Rejecting this argument, and noting that "[t]he record illustrates that the Parabias took several deliberate actions to delay and/or prevent the foreclosure sale from going forward," the Court granted the Bank's TRO. (Doc. no. 295 ("Oct. 16 Order" or "Order").) With Lopez's assistance, the Parabias have flouted the Order in every possible way.

## II.   DISCUSSION

The Bank moves for sanctions against Lopez in the amount of $23,872.50 "or such other amount that will fairly compensate [the Bank]" pursuant to 28 U.S.C. § 1927 for the expenses incurred since October 16, 2019 due to Lopez's unreasonable and vexatious multiplication of proceedings with full knowledge of his clients' history of frivolous and fraudulent filings. (Doc. no. 334 at 1; doc. no. 334-1 at 2, 12.)

Title 28 U.S.C. § 1927 provides in pertinent part,

> Any attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

Lopez opposes the Bank's motion arguing that his filings were supported by law and facts as he knew them, he lacked the requisite bad faith, and the Bank failed to show

/ / /

that its attorneys' fees costs, and expenses were reasonable or caused by Lopez's sanctionable conduct. (Docs. no. 335, 335-1.[3])

### A.  Multiplication of Proceedings

The Court first turns to the issue whether Lopez multiplied the proceedings in this action.  Because the Bank requests attorneys' fees incurred after October 16, 2019, the Court focuses on proceedings since that date.

The October 16, 2019 Order granted the Bank's TRO and appointed a receiver for the Property, ordered production of the property insurance policy, allowed the Bank to enter the Property for purposes of inspection, and ordered the Parabias to pay rent while they remained in possession during their post-foreclosure redemption period.  The Court rejected Lopez's argument that the Bank was not entitled to relief unless it had filed and prevailed in an unlawful detainer action.  (*See* docs. no. 292, 295.)  Since then, Lopez has unsuccessfully reasserted the unlawful detainer argument in three more filings (docs. no. 298, 310, 319), and filed a number of meritless briefs to interfere with the Bank's rights after foreclosure and facilitate the Parabias' strategy of delay in order to remain in possession of the Property rent-free.

The October 16 Order required the Parabias to produce the property insurance policy to the Bank's receiver.  (Order at 10.)  The Parabias did not oppose this provision.

---

[3]  The Bank objected to the admissibility of Lopez's declaration (doc. no. 335-1) based on failure to substantially comply with 28 U.S.C. § 1746(2).  (*See* doc. no. 336 at 5.)  Lopez made his declaration based on personal knowledge and stated it was "true and correct . . . under the laws of the State of California," but did not state that he made the declaration "under penalty of perjury." (*See* doc. no. 335-1 at 1, 7.)  Accordingly, he did not comply with Section 1746.  *See Commodity Futures Trading Comm'n v. Topworth Int'l, Ltd.,* 205 F.3d 1107, 1112 (9th Cir. 1999) (finding substantial compliance because the declaration stated it was "true and correct under penalty of perjury"); *Schroeder v. McDonald,* 55 F.3d 454, 460 n.10 (9th Cir. 1995) (same).  Although the Court finds the declaration inadmissible, it is considered in this order as an offer of proof.

(*See* docs. no. 292, 298, 299.)  Nevertheless, they refused to comply until after the Bank had filed an ex parte application to enforce the Order.

The Bank filed its application after a month-long attempt to informally resolve the issue, having made four requests on Lopez, and the receiver having directly requested a copy of the policy from the Parabias.  (*See* doc. nos. 302-1 through 3.)  On October 21, 2019, Lopez represented to the Bank's counsel that he had asked the Parabias to provide the policy.  (Doc. no. 302-2 at 3-4; see also doc. no. 302-1 at 2.)  When the receiver asked for the policy at the October 25, 2019 Property inspection, Perin Parabia told him he should ask Lopez.  (Doc. no. 302-3 at 2.)  Only after the ex parte application was filed, did Lopez provide the insurance policy to the Bank.  (*See* doc. no. 304.)

Because Lopez eventually provided the insurance policy to the Bank, its ex parte application was denied as moot.  (Doc. no. 306.)  Nevertheless, his failure to comply with the Order in due course multiplied the proceedings by requiring the Bank to file the ex parte application (doc. no. 302).

Next, the October 16 Order required the Parabias to pay rent while they remained in possession during their 90-day redemption period.  (Order at 3, 5.)  On October 25, 2019, the receiver informed Perin Parabia that the Court had ordered her and her brother to pay rent.  (Doc. no. 301.)  She replied that Lopez had instructed them they were not required to pay.  (*Id.*)  Despite the Court's orders, the Parabias did not pay any rent.  (*See* doc. nos. 313-3 at 2, 313-10 at 1.)

The Parabias were provided an opportunity to show cause why the Order should not stay in effect during the entire 90-day right of redemption.  (Order at 11-12.)  Although the Court had already rejected the unlawful detainer argument, Lopez asserted it again in response to the order to show cause.  (Doc. no. 298.)  This necessitated the Bank to respond.  (*See* docs. no. 299, 300, 301.)  The Court explicitly rejected the

///

argument. (*See* doc. no. 307.)[4] Nevertheless, Lopez raised the argument for the third time in opposition to the Bank's motion to set the rent amount (doc. no. 309), necessitating the Bank to respond yet again (doc. no. 310).  The unlawful detainer argument was rejected as before. (Doc. no. 311 at 2.)

The October 16 Order was to remain in place for the duration of the redemption period, and the Parabias were ordered to pay $20,000 in rent per month. (Docs. no 307, 311.) When the redemption period expired, the Parabias had not paid any rent. On January 22 and 27, 2020, the Bank's counsel attempted to meet and confer with Lopez to arrange for payment of rent and vacating the Property, however, Lopez did not respond to either of these attempts. (Doc. nos. 313-3 at 1-2, 313-10.) As of January 29, 2020, the Parabias still had not paid any rent. Accordingly, the Bank filed a motion for a Writ of Execution to collect past-due rent. (Docs. no. 313, 315, 315-1.) The Parabias did not oppose, and the writ issued accordingly. (Doc. no. 317.)

Lopez's repeated assertion of the baseless unlawful detainer argument enabled the Parabias to flout the Order by occupying the Property rent-free, led to the multiplication of proceedings by requiring the Bank to repeatedly brief the issue (docs. no. 300, 301, 310) and ultimately request a writ of execution (docs. no. 313, 315).

Having been the successful bidder at the judicial foreclosure sale, on October 22, 2019, the Bank filed a Motion for an Order for the Distribution of the Proceeds from the Sale of the Subject Property. (Doc. no. 296 ("Motion for Distribution of Proceeds").) The Bank had paid the U.S. Marshal to cover the fees of the sale and the estimated judgment amount as provided in the Judicial Foreclosure Order.[5] (*See* doc. no. 296-2.)

---

[4] The ruling was affirmed on appeal. (*Cf. State Bank of Texas v. Sam Parabia et al.*, 20-55154 (9th Cir.) ("Parabias' Appeal") doc. no. 35-1 at 3; *with* doc. no. 307 herein (both decisions citing Cal. Code Civ. Proc. § 729.090(a)).

[5] The Judicial Foreclosure Order provided for a foreclosure sale of the Property conducted by the U.S. Marshal Service, listed the amounts the Parabias owed the Bank,

The Parabias opposed. (Doc. no. 303.) They did not dispute the amount they owed the Bank, they did not dispute the amount of attorneys' fees, costs or interest as calculated by the Bank, they did not dispute the amount the Bank paid at the foreclosure sale for the Property, and they did not contend that the Court should distribute any portion of the proceeds to them. (*See* doc. no. 312 at 2.) The Bank was not asking for a deficiency judgment against the Parabias and took the Property subject to senior liens. (*See id.*) Still, the Parabias opposed the distribution of proceeds to the Bank claiming that the Bank "wishes to have its cake and eat it too." (Doc. no. 303 at 2.) Lopez argued that to obtain a distribution, the Bank "had to have paid something for the property at the sale," and, incongruently, that the Bank was not allowed to make a cash bid but should have made a credit bid. (*Id.* at 2-3.) Because the Bank's bid and request for disbursement complied with the law and the Judicial Foreclosure Order, the argument was rejected. (Doc. no. 312.)[6] Lopez multiplied the proceedings when he filed the wholly meritless opposition to the Bank's Motion for Distribution of Proceeds, requiring the Bank to respond (doc. no. 305).

After the deed of sale was recorded (*see* doc. no. 313-4) and the 90-day redemption period expired, the Parabias refused to vacate the Property. The Bank counsel twice contacted Lopez to inquire whether the Parabias would be willing to voluntarily vacate; however, he received no response. (Doc. no. 329-3 at 2-3.) On January 29, 2020, the receiver spoke to Perin Parabia on the phone. (Doc. no. 313-2 at 2.) She told him that her brother and herself were still the owners of the Property and are still occupying it.

---

set the total of these amounts as the minimum sale price for the Property, and directed that the proceeds of the sale be deposited with the Court. (Judicial Foreclosure Order at 9-10.) Any surplus over the minimum sale amount was to be distributed according to California law, and the Court retained jurisdiction to determine any deficiency against the Parabias. (*Id*. at 10-11.)

[6]  The ruling was affirmed on appeal. (*Cf.* Parabias' Appeal doc. no. 35-1 at 2; *with* doc. no. 312 herein (both decisions citing Cal. Code Civ. Proc. § 701.590(b)).

(*Id.*)  As before, she directed him to Lopez "for more information." (*Id.*)  Having received no response from Lopez, the Bank filed a Motion for a Writ of Possession. (Doc. no. 313, 314.)  The Parabias did not oppose, and the writ was issued accordingly. (Doc. no. 316.)

On February 10, 2020, the Parabias filed a Motion to Quash Writ of Possession ("Motion to Quash") challenging the validity of the sale.  (Doc. no. 319.)  For the fourth time Lopez argued that the Bank must bring an unlawful detainer action to obtain possession of the Property from the Parabias.  (*Id.* at 3-7.)  On February 20, 2020, the Bank's counsel requested Lopez to withdraw his baseless motion.  (Doc. no. 334-11 at 2; doc. no. 334-12 at 2.)  Lopez did not withdraw the motion but requested hearing on shortened time.  (Doc. no. 325.)  The Bank filed an opposition to the motion and application for shortened time.  (Docs no. 326, 329.)  The Motion to Quash was denied as lacking any merit.[7]  (Doc. no. 331.)  Lopez multiplied the proceedings by necessitating the Bank to file a request for a writ of possession before the Parabias vacated the Property and oppose their baseless Motion to Quash (docs. no. 313, 314, 326, 329).

Based on the foregoing, the Court finds that Lopez multiplied the proceedings in this action after October 16, 2019.  Lopez does not deny that he took the actions that multiplied the proceedings.

### B.     Unreasonably and Vexatiously

"[A]n award of sanctions under 28 U.S.C. § 1927 . . . requires a finding of recklessness or bad faith." *Fink v. Gomez,* 239 F.3d 989, 993 (9th Cir. 2001); *see also*

/ / /

---

[7]     The Parabias filed an emergency petition for a writ of mandamus to appeal the ruling.  (Doc. no. 332; (*State Bank of Texas v. Sam Parabia et al.*, 20-70838 (9th Cir.).)  The Court of Appeals dismissed the petition on procedural grounds.  (*See* doc. no. 338 herein.)

*B.K.B. v. Maui Police Dept.,* 276 F.3d 1091, 1107 (9th Cir. 2002).[8] "[S]ubjective bad faith . . . is present when an attorney knowingly or recklessly raises a frivolous argument, or argues a meritorious claim for the purpose of harassing an opponent." *B.K.B.,* 276 F.3d at 1107 (emphasis omitted) (quoting *In re Keegan Mgt. Co. Sec. Litig.*, 78 F.3d 431, 436 (9th Cir. 1996)). "Without more, reckless, but nonfrivolous, filings may not be sanctioned." *Stone Creek, Inc. v. Omnia Italian Design, Inc.*, 875 F.3d 426, 442 (9th Cir. 2017). On the other hand, "[s]anctions are permissible when an attorney has acted recklessly if there is something more—such as an improper purpose." *Fink*, 239 F.3d at 993.

Based on the record summarized in Section II.A. above, the Court finds that Lopez's actions were undertaken in bad faith. His numerous filings were consistently based on patently meritless and frivolous arguments. Furthermore, Lopez stonewalled even the most basic meet-and-confer efforts to comply with the law and this Court's orders such as to produce the insurance policy, make arrangements to pay rent, and vacate the Property upon expiration of the 90-day redemption period. The Court further finds that Lopez acted for the improper purpose of delay and interference with the Bank's rights after foreclosure.

In his opposition, Lopez protests he did nothing wrong. (Doc. no. 335 at 4, 6.) He is an experienced foreclosure and unlawful detainer attorney, and contends he merely wanted to force the Bank to comply with California law. (*Id.* at 3, 4, 6; *see also* doc. no. 335-1 at 2-6.) To the contrary, the record shows that, independently of Lopez's actions, the Bank followed the law and the orders of this Court.

Lopez argues it was the Bank's own fault that it racked up its fees, claiming there is no "evidence . . . that [he] took affirmative action that made the motions filed by [the Bank] necessary," and that the Bank "brought several motions at their [*sic*] own

---

[8] Unless otherwise noted, internal quotation marks, brackets, ellipses, citations, and footnotes are omitted.

1  discretion."   (Doc. no. 335 at 2-4, 6; doc. no. 335-1 at 4-5.)  As discussed above,
2  Lopez's refusal to engage in meet-and-confer efforts on even the most basic matters of
3  the Parabias' compliance with the law and orders of this Court required the Bank to file
4  its ex parte application for production of the property insurance policy and motions for
5  writs of possession and execution (docs. no. 302, 313, 314, 315.)

6      Lopez also blames his predecessor.  He claims the Judicial Foreclosure Order was
7  the result of the prior counsel "dropping the ball." (Doc. no. 335-1 at 2.)  The time to
8  appeal the resulting judgment and writ of sale "had run long before [he] became
9  involved.  As a result, [he] could only make sure that [the Bank] held the sale in
10 compliance with California law in regard to the sale, protect the Parabias [from being
11 removed from the Property], and point out the Court that the Parabias claimed that they
12 had settled with [Bank's] President." (*Id*. at 2.)

13     None of these contentions are availing.  The Bank's pending motion concerns only
14 litigation since October 16, 2019, after the sale had already taken place; accordingly,
15 none of Lopez's actions at issue affected the sale.  The contention that the Parabias had
16 settled by way of Sam Parabia's agreement with Chan Patel in India, and thus allegedly
17 satisfied the judgment before the sale, was rejected as unsupported in the October 16,
18 2019 Order.  None of Lopez's actions thereafter were based on the purported settlement
19 in India.  Finally, as the record demonstrates, and Lopez acknowledges, his actions
20 furthered the Parabias' strategy of delay in order to continue occupying the Property rent-
21 free.

22     Finally, Lopez blames his clients.  He contends that when he was retained in
23 September 2019, he was unable to review the files of the Parabias' prior counsel, and
24 "mostly learned of the facts of the case by reviewing available court records." (Doc. no.
25 335-1 at 2.)  The declarations Lopez filed on behalf of the Parabias in support of their
26 Motion to Set Aside Default show he was aware of Sam Parabia's bankruptcy and Perin
27 Parabia's Removed Action. (*See* docs. no. 284-2, 284-3.)  In their respective
28 declarations, the Parabias admitted that Sam Parabia's Bankruptcy and Perin Parabia's

Removed Action were filed to forestall foreclosure. (Doc. no. 284-3 at 2; doc. no. 284-2 at 2.)

In consulting court records of those proceedings, Lopez must have learned that after commencing each proceeding, the Parabias did not actively pursue relief, suggesting the proceedings had been filed for the improper purpose of delay. The records in Sam Parabia's Bankruptcy contain the Bankruptcy Court's finding on August 20, 2019, that "the Debtor's filing of the Petition was a part of a scheme to delay, hinder, or defraud creditors that involved [¶] multiple bankruptcy filings affecting the Romero Drive Property." (*Id.* doc. no. 76 at 3.) Finally, Lopez must have been aware of this Court's October 16, 2019 finding that "[s]ince Default Judgment was issued, the record illustrates that the Parabias took several deliberate actions to delay and/or prevent the foreclosure sale from going forward." (Order at 2.) Lopez's protestation of ignorance based on the limited information he received from his clients are rejected.

Lopez also contends he could not "make his clients agree to something they do not want to." (Doc. no. 335 at 6.) While the Court assumes, *arguendo*, that this is true, Lopez could have refused to file frivolous briefs and engage in stonewalling of reasonable meet-and-confer efforts. The Civil Local Rules of this District and the Rules of Professional Conduct of the State Bar of California suggest that he should have. *See* R. of Prof. Conduct 3.2; Civ. Loc. Rule 2.1(a)(2)(f)-(h).

Based on the foregoing, the Court finds that Lopez unreasonably and vexatiously multiplied proceedings in this action by advancing frivolous arguments and stonewalling reasonable efforts to meet and confer for the improper purpose of delay and interference with the Bank's rights after foreclosure.

### 3. Attorneys' Fees

When an attorney unreasonably and vexatiously multiplies proceedings, section 1927 provides for recovery from the attorney personally of "excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927. The ///

1  Bank requests an award of $23,872.50 in attorneys' fees "or such other amount that will
2  fairly compensate" it for Lopez's sanctionable conduct.  (Doc. no. 334-1 at 15.)
3       Based on the record discussed above, the Court finds that Lopez's sanctionable
4  conduct caused the Bank to incur attorneys' fees, costs, and expenses for the following:
5       1.    repeated informal efforts to obtain a copy of the property insurance
6  policy and the filing of related ex parte application (doc. no. 302);[9]
7       2.    briefing the Parabias' arguments relative to their obligation to pay rent
8  and the appropriate rent amount, any informal efforts to obtain payment of rent, and
9  motion for a writ of execution (docs. no 300, 301, 310, 313, 315);
10      3.    responding to the Parabias' opposition to the Bank's Motion for
11 Distribution of Proceeds (doc. no. 305); and
12      4.    informal efforts to obtain possession of the Property, motion for a writ
13 of possession, and opposition to the Parabias' Motion to Quash (docs. no. 314, 326, 329).
14      The amount of sanctions must be reasonable.  *See* 28 U.S.C. § 1927.  Reasonable
15 attorneys' fees are determined by following the lodestar approach.  *Mirch v. Frank*, 266
16 Fed. Appx. 586, 588 (9th Cir. 2008) (citing *Intel Corp. v. Terabyte Int'l*, 6 F.3d 614, 622
17 (9th Cir. 1993)).  Under this approach, the court calculates the presumptively-reasonable
18 lodeastar figure by multiplying the hours reasonably spent in countering sanctionable
19 conduct by a reasonable hourly rate.  *Mirch,* 266 Fed. Appx. at 588; (citing *Hensley v.
20 Eckerhart,* 461 U.S. 424, 433-34 (1983)).  The Court may also consider a departure from
21 the lodestar by analyzing the factors enumerated in *Kerr v. Screen Extras Guild, Inc.,* 526
22 F.2d 67, 69-70 (9th Cir. 1975).  *See Chalmers v. City of Los Angeles,* 796 F.2d 1205,
23 1212 (9th Cir. 1986).  "The party seeking an award of fees should submit evidence
24 supporting the hours worked and rates claimed."  *Hensley*, 461 U.S. at 433.
25 / / /
26
27 ─────────────────
28 [9]    All references to docket entries include all filings within the entry.

In support of the requested fees, the Bank filed a declaration of its counsel Lawrence Hilton, stating he had spent at least 33.1 hours on this case due to Lopez's sanctionable conduct at a discounted rate of $375 per hour. (Doc. no. 334-11 at 2.) He also declared his co-counsel Robert Hunt spent at least 38.2 hours due to Lopez's sanctionable conduct at a discounted rate of $300 per hour. (*Id*. at 2-3; *see also* doc. no. 336-5 at 4.[10]) This evidence is insufficient to perform the lodestar analysis. Accordingly, the Court reserves the issue of reasonableness of the requested fees for consideration based on further briefing.

## III. CONCLUSION

For the foregoing reasons, the Bank's motion for sanctions is granted insofar as the Court finds that the Bank has met its burden to show that sanctions against Lopez are appropriate pursuant to 28 U.S.C. § 1927. The Court reserves the issue of reasonable attorneys' fees for decision based upon further briefing and submission of evidence. No later than April 2, 2021, the Bank shall file a brief together with declarations and evidence in support of the requested attorneys' fees. No later than April 9, 2021, Lopez shall file his opposition, if any. No later than April 16, 2021, the Bank shall file a reply, if any. Upon filing of the foregoing, the parties shall await further order of the Court.

**IT IS SO ORDERED**.

Dated: March 26, 2021

_____
Hon. M. James Lorenz
United States District Judge

---

[10] Lopez objects to Hunt's declaration filed at doc. no. 336-5 (Ex. A to Decl. of Lisa Hyska). (Doc. no. 337 at 2.) The objection is overruled, because the same evidence of the Bank's attorneys' fees was filed with the Bank's motion. (*Cf.* doc. no. 334-11 at 2-3.)